IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FRANKLIN AMERICAN MORTGAGE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 3:10-cv-0069 ) |
| EAGLE NATIONAL BANK, | ) Judge Thomas A. Wiseman, Jr. ) Magistrate Judge John S. Bryant |
| Defendant. | ) |

**MEMORANDUM OPINION**

Before the Court is the Motion to Remand (Doc. No. 12) filed by Plaintiff Franklin American Mortgage Company ("FAMC"). For the reasons set forth herein, FAMC's motion will be denied.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Eagle National Bank ("Eagle National") is a mortgage lending company that originates and sells residential mortgage loans. (Compl. ¶ 3.) Eagle National is a Pennsylvania corporation with its principal place of business in Pennsylvania. (Compl. ¶ 2; Def.'s Answer ¶ 2.) Plaintiff FAMC, a Tennessee corporation with its principal place of business in Tennessee, is engaged in the business of buying and reselling mortgages. (Compl. ¶¶ 1, 3, 17.)

In July 2007, FAMC entered into a Correspondent Loan Purchase Agreement ("Purchase Agreement") with Eagle National. (Compl. ¶ 9.) Under the Purchase Agreement, Eagle National agreed to sell residential mortgages to FAMC according to the terms and conditions set forth in the Purchase Agreement. (Compl. ¶ 10.) FAMC alleges that the Purchase Agreement contains representations and warranties on the part of Eagle National as seller as to all mortgage loans sold to FAMC under the Agreement, and also imposes certain duties and obligations on Eagle National in the event of breach or default of those representations. (Compl. ¶¶ 11, 12.) In addition, according to FAMC, the Purchase Agreement requires Eagle National to repurchase any mortgage loans and indemnify FAMC for losses associated with any mortgage loans sold to FAMC under the terms and conditions of the Purchase Agreement. (Compl. ¶ 13.)

FAMC further alleges that, pursuant to the Loan Agreement, Eagle National originated and sold to

it a certain mortgage loan, identified in the complaint by the borrower's name and the last four digits of the loan number (hereinafter, the "Mortgage Loan"), and that, as a condition of FAMC's purchase of the Mortgage Loan, Eagle National represented that the Mortgage Loan met all applicable agency and investor underwriting and purchase requirements. (Compl. ¶¶ 14–15.) Soon after FAMC purchased the Mortgage Loan and attempted to sell it to a third party, the Loan went into default, and FAMC allegedly discovered that the Loan did not meet all applicable investor and FAMC underwriting guidelines. (Compl. ¶ 17.) FAMC asserts in the Complaint that it timely notified Eagle National of its discovery of defects and deficiencies in the underwriting of the Mortgage Loan and, in accordance with the Purchase Agreement, demanded that Eagle National repurchase the mortgage loan and/or indemnify FAMC for losses associated with the Loan as required by the terms of the Purchase Agreement. (Compl. ¶ 18.)

According to FAMC, Eagle National "failed and refused" to repurchase the Mortgage Loan or to indemnify FAMC for losses associated with it. (Compl. ¶ 19.) FAMC asserts that Eagle National's refusal to repurchase the Mortgage Loan or to indemnify FAMC constitutes breach of the Purchase Agreement. FAMC filed suit in the Williamson County Chancery Court on August 5, 2009 to recover damages arising from the alleged breach. The initial pleading filed by FAMC did not indicate the amount of money in controversy, but it did identify each party's state of incorporation and principal place of business and thus revealed complete diversity of citizenship among the parties.

Eagle National received service of the summons and complaint on August 7, 2009. Eagle National did not immediately seek removal on the basis of federal diversity jurisdiction and, under an agreed extension of the deadline, did not file its answer to the complaint in Chancery Court until November 2, 2009. Along with its answer, Eagle National served its first set of interrogatories on FAMC. Eagle National's interrogatories requested that FAMC "[s]et forth a full, precise and complete calculation of the damages which [it] seek[s] to recover." (Doc. No. 1-3, at ¶ 3.) FAMC's answers to Eagle National's interrogatories were served on Eagle National effective December 23, 2009. FAMC responded to the damages interrogatory by specifically referencing an "Indemnity Invoice" presented to Sam Morelli, President and COO of Eagle National's mortgage division, in a letter from FAMC to Mr. Morelli dated January 29, 2009, as well as a "Wire Confirmation whose date range is February 1, 2009 – February 28, 2009," which purportedly confirmed that FAMC had incurred damages in the amount of at least

$136,300.82. (Doc. No. 103, Answer to ¶ 3.) FAMC also produced copies of the referenced documents in response to Eagle National's requests for production of documents.

Eagle National removed the case to federal court on January 22, 2010, within thirty days of service of FAMC's answers to Eagle National's first set of interrogatories. Removal was premised upon 28 U.S.C. § 1332, as the parties are completely diverse and the amount in controversy exceeds $75,000. Eagle National asserts in its Notice of Removal that removal was timely under 28 U.S.C. § 1446 because (1) the amount in controversy could not be ascertained from the complaint; (2) Eagle National had not been able "to intelligently ascertain" that plaintiff's damages claim exceeded $75,000 until it received the plaintiff's discovery responses confirming the amount of damages it sought in the case; and (3) Eagle National removed within thirty days of the date upon which it first had notice, through the discovery responses, that FAMC's complaint was removable. (Notice of Removal, Doc. No. 1.)

FAMC promptly filed its Motion to Remand in which it asserts that removal was not timely because Eagle National was "well aware" at the time it received service of the complaint that the amount in controversy exceeded $75,000. (Doc. No. 12, at ¶ 10.) Specifically, FAMC asserts that it "issued a formal demand for indemnification" in a letter to Eagle National dated January 29, 2009, requesting indemnification in the amount of $138,999.62 for losses attributable to the Mortgage Loan that is the subject of the complaint. FAMC also notes that Eagle National's receipt of the demand letter is documented by the response letter from Samuel B. Morelli, President and COO of the Mortgage Division of Eagle National, dated February 9, 2009, refusing FAMC's indemnification demand and explaining why Eagle National believed it had no obligation to indemnify. (*See* Doc. No. 12-2 (1/29/2009 FAMC Demand Letter); Doc. No. 12-3 (2/9/2009 Eagle National Refusal Letter).) FAMC asserts that, regardless of the fact that the amount in controversy was not stated in the complaint, Eagle National's receipt of the demand letter some six months before the filing of the complaint was sufficient to put it on notice that the case was removable based upon the initial pleading. FAMC argues that removal should have been effected, if at all, within thirty days of the filing of the complaint, and that the remand is required because removal was untimely.

## II. DISCUSSION AND ANALYSIS

Under 28 U.S.C. § 1446, removal is generally timely if it is effected "within thirty days after the

receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). The second paragraph of § 1446(b) states, however, that "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* The Sixth Circuit has held that the "strict time requirement for removal in civil cases in not jurisdictional; rather, it is a strictly applied rule of procedure and untimeliness is a ground for remand so long as the timeliness has not been waived." *Seaton v. Jabe*, 992 F.2d 79, 81 (6th Cir. 1993) (citations omitted). Further, "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 405 (6th Cir. 2007).

It is the interpretation and application of the second paragraph of § 1446(b) that is at issue in the present case. The parties agree that there is complete diversity of citizenship between them, that such diversity was clearly pleaded in the complaint, and that the amount in controversy exceeds $75,000. The parties also appear to agree that the "case stated by the initial pleading [was] not removable," because the amount in controversy was not identified in the complaint or in any papers attached to the initial pleading. FAMC, however, contends that Eagle National was in actual possession of "other paper"—the January 29, 2009 demand letter addressed to Samuel Morelli—at the time it received service of the complaint from which Eagle National could easily have ascertained that the case was immediately removable.

In support of its position, FAMC relies primarily upon an unreported Sixth Circuit opinion, *Holston v. Carolina Freight Carriers Corp.*, No. 90-1358, 1991 WL 112809 (6th Cir. June 26, 1991), in which the court reversed the district court's ruling and granted the plaintiff's motion to remand on the basis that the defendant's removal was untimely. There, the basis for removal was that the plaintiff's state law claims actually stated a federal law claim under § 301 of the Labor Management Relations Act ("LMRA"), which also preempted the state law claims. The defendant filed the notice of removal within thirty days after receipt of the transcript of the plaintiff's deposition, and asserted that it had been unable to "ascertain" preemption until the plaintiff admitted in his deposition that he was a union member and that the "casual"

job position from which he had been discharged, and the full-time job he had allegedly been promised, were both positions covered under the union's Collective Bargaining Agreement ("CBA"). The plaintiff filed a motion to remand, arguing that the defendant had knowledge of possible preemption no later than the date on which it filed its amended answer which, although it did not reference the CBA, clearly demonstrated the defendant's knowledge that plaintiff was hired as a "casual" employee under its terms; in addition, a copy of the CBA was attached to the answer.

In analyzing the application of the second paragraph of § 1446(b) to the facts before it,[1] the court rejected the defendant's contention that "information establishing removal must come from a source outside of defendant's control." *Holston*, 1991 WL 112809, at *2. Instead, the court held that "§ 1446(b) starts the thirty-day period running from the date that a defendant has *solid and unambiguous information* that the case is removable, even if that information is solely within its own possession." *Id.* at *3 (emphasis added). To reach that conclusion, the court found § 1446(b) to be ambiguous regarding from whom the defendant must "receive" notice that a case is removable, and held that because statutes conferring removal jurisdiction must be construed strictly, the phrase should be construed broadly to include, for example, "papers discovered by the defendant during its trial preparation." *Id.* The court also stated, however, that mere *possession* of the papers alone is not sufficient—the defendant must actually associate the requisite papers with the lawsuit in question:

> The requirement that such facts must be "received" by the defendant does not detract from this . . . conclusion. The defendant may have the papers in its possession as of the filing of the suit, but it does not receive notice of the facts contained therein until it reviews those papers in connection with the suit.

*Id.* (internal citation omitted).

In applying that holding to the facts before it, the court determined that the defendant obviously had notice of removability as of the date it filed its amended answer to raise a pre-emption defense (in which it expressly averred that "plaintiff's claim is pre-empted by the Labor Management Relations Act"). Because the pre-emption defense had not been raised in defendant's original answer, the court noted that "[i]t [was] not at all a leap in logic to surmise that some new information had been found by

---

[1] The court stated that it would not disturb the district court's conclusion that the plaintiff's initial complaint "did not provide any clues regarding the removability of the case," as the district court's finding in that regard was not clearly erroneous. *Id.* at *2 n.1.

[defendant] in the interim period between the filing of the initial answer and that of the amended answer." *Id.* at *6. The court concluded that that knowledge—which apparently came from review of documents already in the defendant's possession—constituted the notice that triggered the running of the thirty-day removal period.

Plaintiff FAMC insists that *Holston* supports its position and, recognizing that the unreported Sixth Circuit decision is not binding on this Court, *Stone v. William Beaumont Hosp.*, 782 F.2d 609, 614 n.4 (6th Cir. 1986), points out that other district courts within this circuit have found it persuasive. (*See* Doc. No. 12 (citing, among others, *Mozee v. Dugger*, 616 F. Supp. 2d 672, 673–74 (W.D. Ky. 2009); *Bragg v. Ky. RSA*, 126 F. Supp. 2d 448, 450 (E.D. Ky. 2001).[2]

Eagle National, in its opposition to remand, points out first that *Holston* actually supports its position in the present case and, second, that a majority of circuits to consider the issue have rejected the rationale of *Holston* and held that removability is determined by the "four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005); *see id.* at 693 (noting that "every circuit court to consider the question has rejected the duty to investigate approach"); *see also Bosky v. Kroger Tex., LP*, 288 F.3d

---

[2] *Mozee* and *Bragg* both appear to hold, as did *Holston*, that mere possession of information concerning removability is not sufficient to constitute "notice" of removability unless the papers are reviewed in connection with the lawsuit, and so, as discussed below, cannot be construed to favor remand in the present case. *See Mozee*, 616 F. Supp. 2d at 673–74 (W.D. Ky. 2009) (noting that "one never reads a complaint in a vacuum," and holding that the defendant was "able to ascertain from a fair reading of the complaint that the minimum jurisdictional amount exists," because plaintiff's counsel had communicated in writing with defendants detailing plaintiff's medical condition and demanded $200,000 in settlement approximately a year before filing suit, and more importantly that the plaintiff's complaint was filed contemporaneously with requests for admissions, one of which asked defendants to admit that plaintiff was entitled to $100,000 in pain and suffering); *Bragg v. Ky. RSA*, 126 F. Supp. 2d 448, 450 (E.D. Ky. 2001) (holding that removal was untimely where the complaint, pursuant to Kentucky law, did not state the amount of damages sought, but plaintiff had provided defendant a damage report in attempt to settle several months prior to filing suit, estimating damages in excess of $400,000, and defendant served an interrogatory several months after the filing of the initial complaint asking whether the plaintiffs were "seeking damages in excess of the sum of $ 483,000.00 set forth in the Report of Dee Dee Construction Company dated 2/20/99 previously provided to the Defendants on or about September 27, 1999?" which the court deemed to establish that the defendant had knowledge that amount in controversy exceeded jurisdictional amount at the time the complaint was filed).

Other cases cited by the plaintiff appear to impose an obligation to investigate upon the defendant that is not justified by *Holston* nor supported by any meaningful analysis. *See, e.g.*, *Johnson v. Hartford Fire Ins. Co.*, No. 4:08-CV-74, 2008 U.S. Dist. LEXIS 62599 (W.D. Ky. Aug. 15, 2008) (holding that removal was not timely because the defendant "could have shown," at the time the complaint was filed, "based upon the Complaint and Hartford's knowledge of the case, that if the Plaintiffs were successful in their action, that the amount-in-controversy more likely than not exceeded $ 75,000").

208, 211 (5th Cir. 2002) (holding the grounds for removal must be "unequivocally clear and certain" from the initial pleadings themselves to trigger the running of the thirty-day removal period).

This Court agrees that removal in the present case was timely. The amount in controversy was not identified in FAMC's complaint and, regardless of whether some document in Eagle National's possession might have suggested that the amount in controversy in this case met the jurisdictional limit, Eagle National had no obligation to conduct a search of what might be voluminous business records within thirty days of receipt of the complaint in order to verify whether it might have information revealing the amount in controversy. *Holston* supports this conclusion, as it made a clear distinction between possession of a paper and notice of removability, explaining, as set forth above, that even though a defendant may have papers in its possession indicating removability prior to the filling of a suit against it, that defendant does not receive notice of the facts contained therein until it reviews those papers in connection with the suit. Here, there is no evidence that Eagle National associated the plaintiff's January 2009 demand letter with the allegations made in the complaint until FAMC referenced the letter in its interrogatory answer and produced a copy of it in responding to requests for production of documents.

In short, under either *Holston* or the "four corners" rule adopted in other circuits[3] it is clear that Eagle National did not ascertain removability until it received FAMC's discovery answers. Its Notice of Removal was filed within thirty days of receipt of such notice.

---

[3] This Court finds that the "four-corners rule" adopted by other circuits is consistent with a plain reading of § 1446(b), easier to administer and more fair to all parties, and therefore should be adopted in the Sixth Circuit. *Cf.* 16-107 James Wm. Moore et al., Moore's Federal Practice § 107.30[3][f] (2010) (noting that all the Courts of Appeals that have considered the issue in published opinions, including the Second, Fifth, Ninth, Tenth and Eleventh Circuits, have all held that "the right to remove must be unequivocally apparent from the pleading" before the removal period is triggered, and opining that this approach is "the better rule").. However, because it is clear that removal was timely in this case under either *Holston* or the four-corners rule, this Court has no need to make an express holding as to which standard should apply.

**III.     CONCLUSION**

FAMC's motion to remand will be denied for the reasons set forth herein.  An appropriate Order will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge